Filed 8/3/26  P. v. Loza CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B338229 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA507083-02) |
| v. | |
| DRAKE NATHANIEL LOZA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Michael Reed, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted appellant Drake Nathaniel Loza and co-defendant Andres Garcia of willful, deliberate and premeditated attempted murder in violation of Penal Code[1] sections 187, subdivision (a), and 644. The jury found true that Loza personally inflicted great bodily injury and personally used a deadly weapon in violation of sections 12022.7, subdivision (a) and 12022, subdivision (b)(1). The jury also convicted Loza of a second count —possessing a weapon while in custody in violation of section 4502, subdivision (a). Loza admitted he suffered one prior strike conviction for manslaughter.

The trial court sentenced Loza to 17 years to life in prison, comprising seven years to life, doubled pursuant to the Three Strikes law, for the attempted murder conviction, plus a consecutive three-year term for the great bodily injury enhancement. The court imposed a concurrent one-year term for the personal use of a weapon enhancement. For count 2, possession of a weapon in custody, the court imposed a concurrent middle term of three years. Loza timely appealed.

On appeal, Loza contends four grounds compel reversal of the judgment: 1) as to the charge of attempted murder, the trial court erred in not instructing the jury on the lesser included offense of assault with a deadly weapon; 2) as to the same charge, the trial court erred in not instructing the jury on the lesser related offense of assault with a deadly weapon; 3) the court erred in imposing concurrent punishment for the possession count instead of staying the sentence under section 654; 3) the trial court erred in declining, for public safety concerns, to dismiss Loza's enhancements. We affirm the judgment.

---

[1] Statutory references are to the Penal Code.

# FACTUAL BACKGROUND

Loza was convicted of stabbing a fellow inmate 30–40 times while they were incarcerated at the Men's Central Jail in Los Angeles County. The evidence at trial established that around 4:30 p.m. on August 22, 2021, two inmates in the shower area of the jail appeared to be punching a third inmate, whose arms were raised defensively trying to block the blows. The victim of the attack was later identified as Francisco Fuerte. Fuerte was shirtless and had no weapon. Of all the inmates in the shower area, only two inmates, Loza and his co-defendant Garcia, wore shirts; everyone else was barechested. It turned out, the two aggressors were not punching the victim but using "a thrusting motion, more like a fencer." There appeared to be a large amount of blood pooling on the floor.

Deputy sheriffs arrived at the showers and saw Loza and codefendant Garcia with "metal objects" in their hands stabbing Fuerte. Five deputies converged on the scene and separated the attackers from Fuerte. It appeared Fuerte had been stabbed multiple times all over his body, neck, back, arms, and chest. He was transported to a trauma center for treatment. According to the trauma surgeon, Fuerte had been stabbed 30–40 times, an unusually large number, lacerating his lungs, kidney, diaphragm, and neck. He survived because of his youth and because he received lifesaving emergency treatment so quickly.

After the attack, codefendant Garcia climbed up a railing and threw two objects onto a landing. Two objects were later retrieved from the landing. They were two prison-made weapons or "shanks." One weapon appeared to be a sharpened screwdriver with a cloth handle and a loop to secure the weapon onto the wrist. The other was knife-shaped and appeared to have

3

been made out of a piece of inmate bed bunks.  It, too, had a loop on the handle.

The shower waiting area was one of several jail areas where inmates mingle and socialize; the other areas were the dayroom and exercise yard.  There are visible surveillance cameras in the dayrooms and inmates are searched before going out into the yard.  There are no surveillance cameras in the showers, only in the shower waiting area nearby.

## DISCUSSION

I.  ***Assault with a Deadly Weapon is Not a Lesser Included Offense of Attempted Murder.***

Loza faults the trial court for not instructing the jury that assault with a deadly weapon is a lesser-included offense of attempted murder.  Had the trial court done so, the jury would have had the option of considering a lesser charge in lieu of attempted murder.

Generally, the trial court is obligated to instruct sua sponte on any lesser offenses "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed.  (*People v. Birks* (1998) 19 Cal.4th 108, 112, 118.) "This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence." (*Ibid*.)  Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.

4

(*Id.* at p. 117; *People v. Hamilton* (2018) 30 Cal.App.5th 673, 685–686.)

Under the "statutory elements" test, assault with a deadly weapon is not a lesser included offense of attempted murder, because an attempted murder can be committed without using a deadly weapon. (*People v. Alarcon* (2012) 210 Cal.App.4th 432, 436–439 [assault with a firearm not a lesser offense of attempted murder with firearm enhancement]; *People v. Nelson* (2011) 51 Cal.4th 198, 215 [assault with a firearm or a deadly weapon is not a lesser included offense of attempted murder].)

Under the accusatory pleading test, a court looks to whether the charging allegations include language describing the charged offense in such a way that, if committed as alleged, the greater necessarily subsumes a lesser offense. (*People v Alarcon, supra*, 210 Cal.App.4th at p. 436.)

Here the accusatory pleading test is inapplicable given the language of the amended information, which reads: "On or about August 22, 2021, in the County of Los Angeles, the crime of WILLFUL, DELIBERATE, AND PREMEDIATED ATTEMPTED MURDER, in violation of PENAL CODE SECTIONS 664 and 187(a), a Felony was committed by ANDRES CORTEZ GARCIA and DRAKE NATHANIEL LOZA, who did unlawfully and with malice aforethought attempted to murder FRANCISCO FUERTE, a human being." The charge itself is not described in such a way that it necessarily subsumes the lesser offense of assault with a deadly weapon, as it does not accuse the defendants of using a deadly weapon in committing the offense.

Loza argues we must consider the separate deadly weapon enhancement also alleged in the amended information in determining whether the lesser offense of assault with a deadly

5

weapon is subsumed in the description of the charged crime of attempted murder. Here, if the charged enhancement (using a deadly weapon, a knife) were considered, the charge would subsume the lesser offense of assault with a deadly weapon.

Current California law does not permit enhancements to be considered. (*People v. Wolcott* (1983) 34 Cal.3d 92, 101–102 (*Wolcott*) [enhancements are not considered part of the accusatory pleading and are not taken into account when identifying necessarily included offenses for which sua sponte instructions must be given].) Loza argues that the 1983 holding in *Wolcott* has been abrogated by *Apprendi v. New Jersey* (2000) 530 U.S. 466 *(Apprendi).* We disagree. *Apprendi* decreed that any fact other than the fact of a prior conviction that increases the penalty beyond the statutory maximum for the charged offense must be found by a jury true beyond a reasonable doubt. (*Id*. at p. 490.) As set out below, *Apprendi* did not address whether sentencing enhancements must be incorporated into the underlying offense for purposes of determining whether the charging document alleges a necessarily included offense.

Our Supreme Court has rejected the notion that *Apprendi* requires courts to treat sentencing penalty allegations as if they were actual elements of offenses for *all* purposes under state law. (*People v. Izaguirre* (2007) 42 Cal.4th 126, 133–134 [*Apprendi* did not compel conduct enhancements to be considered part of the elements of the underlying offenses]; *Porter v. Superior Court* (2009) 47 Cal.4th 125, 137–138 (*Porter*) [*Apprendi* does not compel California courts to consider enhancements as elements of the underlying offense for purposes of double jeopardy protection].)

*Porter* and *Izaguirre* expressly note that *Apprendi* did not change California's rule that enhancements are not considered legal elements of the offense to which they are attached. Indeed, *Porter* expressly comments that *Apprendi* is confined to situations where enhancements increase the punishment beyond the statutory maximum of the offense charged. Because the enhancement increases punishment, it is the " '*functional equivalent*'" of an element of a greater offense than the one covered by the jury's guilty verdict. (*Porter, supra*, 47 Cal.4th at p. 134.) *Apprendi* has no application in determining how to define necessarily included offenses generally. We conclude we are bound by *Wolcott* as it is still viable precedent.

II. ***The Trial Court Did Not Err in Refusing to Instruct That Assault with a Deadly Weapon Is a Lesser Related Offense of Attempted Murder.***

Twice Loza asked the court to instruct the jury on assault with a deadly weapon as a lesser *related* offense to attempted murder. Both requests were denied. Loza argued there was "a sufficient basis" in the evidence for the instruction, in that he could have attacked and "gravely injured" the victim without the intent to kill him.

The trial court declined to instruct on assault with a deadly weapon, stating that the evidence showed Loza and co-defendant Garcia ambushed Fuerte, hiding their weapons under their shirts until Loza lunged at Fuerte and began stabbing. As a result, Fuente sustained over 30 stab wounds in rapid succession, many of which deeply penetrated his body. The court found this evidence did not support the notion that Loza acted without the intent to kill Fuentes. We agree.

7

If a lesser offense shares some common elements with the greater offense, or if it arises out of the same criminal course of conduct as the greater offense, but it has one or more elements that are not elements of the greater offense as alleged, then it is a lesser related offense, not a necessarily included offense. (*People v. Hicks* (2017) 4 Cal.5th 203, 209; *People v. Lagunas* (1994) 8 Cal.4th 1030, 1034−1035.)

The resolution of a request for instructions on lesser related offenses "involves nuanced ' "questions of degree and judgment." ' " (*People v. Birks*, *supra*, 19 Cal.4th at p. 131.) A trial court has no sua sponte duty to instruct on lesser related offenses. (*People v. Lam* (2010) 184 Cal.App.4th 580, 583.) Nor does the law obligate a trial court to grant a defendant's request for a lesser related offense instruction even if substantial evidence supports the instruction (*ibid.*) or both the defendant and prosecutor agree to it. (*People v. Hall* (2011) 200 Cal.App.4th 778, 806.) However, where a prosecutor objects to an instruction of a lesser related offense, the trial court errs in giving such an instruction. (*Lam,* at p. 583.) Under appropriate circumstances a court may choose to grant a defendant's request for a lesser related instruction if substantial evidence supports the instruction and the prosecutor consents. (*Ibid.*) Nonetheless, a defendant is not entitled to instructions on related offenses in any case in which there is no basis on which the jury could find the offense was less than that charged. (*People v. Wickersham* (1982) 32 Cal.3d 307, 323–324, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200–201.) "[T]he first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the

8

offense to be less than that charged." (*People v. Geiger* (1984) 35 Cal.3d 510, 531, reversed on other grounds by *People v. Birks*, *supra*, 19 Cal.4th 108, 112–113, 136.)

The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) On the other hand, given the authorities we have cited above, it appears case law affords the trial court much latitude, that is, discretion, in deciding whether to give a lesser related instruction. We conclude that under any standard of review, the trial court did not err in declining to instruct on assault with a deadly weapon as a lesser related offense to attempted premeditated murder.

Preliminarily, we note the People neither consented nor objected to Loza's request for a lesser related instruction. We decline to interpret the People's agnostic response to Loza's proposed instruction as consent.

We conclude the trial court correctly found that the evidence at trial strongly supported the charge of attempted murder and did not support the charge of assault with a deadly weapon. It is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder (and not required for assault with a deadly weapon), may be inferred from the defendant's acts and the circumstances of the crime. (*People v. Smith* (2005) 37 Cal.4th 733, 741; *People v. Avila* (2009) 46 Cal.4th 680, 701.) The evidence was substantial that Loza acted with premeditated intent to kill Fuerte, stabbing Fuerte multiple times with weapons at the ready as Fuerte tried to shield himself from the attack. Moreover, Loza presented no evidence from which it could have been inferred that the killing was provoked or was anything other than premeditated and

9

intentional. (*People v. Bolden* (2002) 29 Cal.4th 515, 561 [in plunging the knife so deeply into a vital area of the body of an apparently unsuspecting and defenseless victim, defendant could have had no other intent than to kill]; *People v. Avila*, at p. 701–702 [where defendant repeatedly attempted to stab an unarmed and trapped victim and succeeded in stabbing him in the arm and leg, that evidence alone is substantial evidence of defendant's intent to kill]; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552 [intent to kill demonstrated in part by evidence of unprovoked attack that rendered unarmed victim prone and defenseless as defendant repeatedly stabbed him].)

We conclude the evidence of premeditation and intent to kill was so substantial that there was no basis, other than an "unexplainable rejection of the prosecution's evidence," for a jury to have rejected it. The record includes no other evidence upon which a jury could have explicably rejected the evidence of premeditation and intent to kill. Because of this, a lesser related instruction on assault with a deadly weapon was not warranted.

Nonetheless, if the evidence could be construed as supporting the instruction, any error from foregoing the instruction would be harmless as we conclude it is not reasonably probable that a jury would have returned a verdict more favorable to Loza, given the overwhelming evidence of the entire course of conduct supporting its finding of premeditated, willful and deliberate attempted murder. *(People v. Watson* (1956) 46 Cal.2d 818.) We conclude, for the same reason, that any error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 836–838.

10

III. ***Trial Court Did Not Err in Imposing, Rather Than Staying, the Three-Year Sentence on Count 2, Possession of a Weapon While Confined in a Penal Institution.***

Loza argues the trial court should have stayed the sentence on count 2, possession of a weapon while confined in a penal institution, instead of imposing it concurrently with the sentence for attempted murder. He contends that section 654 prohibits multiple punishments for a single act or omission despite the act being " 'punishable in different ways by different provisions of the law.' " (*People v. Mesa* (2012) 54 Cal.4th 191, 193.) A defendant may sustain multiple convictions arising out of a single act or omission but cannot be subject to multiple punishments for those convictions. (*Id.* at p. 194.) Because Loza possessed the weapon while committing the act of attempted murder, he argues that the three-year sentence for possession should have been stayed. Put another way, there was no evidence that he possessed the weapon prior to and independently of the offense charged.

The People disagree, arguing that the evidence allows the inference that Loza and Garcia arrived at the shower already in possession of the shanks they used to stab Fuerte and therefore section 654 does not compel a stay of the three-year sentence.

Where the facts are undisputed—as they are here—the application of section 654 raises a question of law we review de novo. (*People v. Corpening* (2016) 2 Cal.5th 307, 312.) "In the absence of an explicit ruling by the trial court at sentencing, we infer that the court made the findings appropriate to the sentence it imposed, i.e., either applying section 654 or not applying it." (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.)

11

Section 654, subdivision (a) provides as follows: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences. (*In re Wright* (1967) 65 Cal.2d 650, 652–655 [trial court erred in imposing concurrent sentences for two convictions for which section 654 prohibited multiple punishment]; *People v. Miller* (1977) 18 Cal.3d 873, 887, abrogated on other grounds as stated in *People v. Oates* (2004) 32 Cal.4th 1048, 1067, fn. 8 [concurrent sentences are precluded by section 654 because the defendant is deemed to be subjected to the term of both sentences although they are served simultaneously].)

The Supreme Court has adopted a two-step inquiry to determine whether a defendant may be subject to multiple punishments. Courts must first consider whether "the different crimes were completed by a 'single physical act.' " (*People v. Corpening, supra,* 2 Cal.5th at p. 311.) If they were, the defendant may not be punished more than once. (*Ibid*.) Only if the case involves several acts, or a course of conduct, should courts consider whether the conduct reflects a single intent or objective. Where all the acts and offenses are "merely incidental to, or were the means of accomplishing or facilitating one objective, the defendant may be found to have harbored only a single intent and therefore may be punished only once." Thus, whether, for example, possession of a concealable firearm by a felon constitutes a divisible transaction from the offense in which the weapon is employed depends upon the facts and evidence of each individual case. (*People v. Brown* (1958) 49 Cal.2d 577, 591,

12

superseded by statute as stated in *People v. Burns* (1984) 157 Cal.App.3d 185; *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 (*Venegas*).)

In *Venegas*, whether the unlawful possession of a weapon then used in committing another offense were "divisible" transactions was analyzed under a temporal framework. "Where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. [Citations.] On the other hand, where the evidence shows a possession *only* in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." (*Venegas, supra*, 10 Cal.App.3d. at p. 821 (italic added).)

*People v. Bradford* (1976) 17 Cal.3d 8, 13, 22−23 applies the *Venegas* test: there, as in *Venegas*, the evidence showed the defendant acquired unlawful possession of the weapon at the same time as when he used it to commit other offenses. (*Id.* at pp. 22–23.)

In both cases, the courts did not analyze the facts by using the "single act" test, to wit, was a single act parsed into separate crimes and then unlawfully used to subject the defendant to multiple punishments. Instead, in both cases the courts determined that the evidence showed the defendants obtained possession of the firearm in the course of committing other offenses. Put another way, the courts looked at when the defendants obtained possession of the weapons and concluded that because the defendants obtained the weapons at the same time they committed the other offense, there was but a single course of conduct. In *Bradford*, the court found the defendant's possession of the weapon was not "antecedent and separate" from

13

the use of the weapon in a simultaneous assault. (*Bradford*, *supra*, 17 Cal.3d at p. 22.) The defendant had "wrested" it away from the police officer during his assault on that officer. (*Id.* at p. 13.) *In Venegas*, a shooting in a bar, "the evidence shows a possession *only* at the time defendant shot [the victim]. Not only was the possession physically simultaneous, but the possession was incidental to only one objective, namely to shoot [the victim]." (*Venegas, supra*, 10 Cal.App.3d at p. 821 (italics added).)

Here, too, we use the single course of conduct test and conclude that possession of the illegal shanks did not occur simultaneously with the attack on Fuerte and therefore did not merge into the attack on Fuerte so as to constitute a single course of conduct. It is true the evidence supports the inference that Loza's only purpose in possessing those weapons in the shower was to kill Fuerte. Surveillance video of the shower waiting area shows Loza with his hand under his shirt.

Nonetheless, adding the temporal factor, we ask whether Loza's possession of the shank was "distinctly antecedent to" and "separate" from the actual act of stabbing Fuerte. The answer is yes, because the evidence allows the inference that he and Garcia possessed the prison-made weapons while in custody before the attack and brought them into the shower area under their shirts for the purpose of stabbing Fuerte. There was no evidence that Loza fortuitously came into possession of the shanks in the shower area as he was about to commit the attack on Fuerte. Nor does such an inference comport with the jury's finding that the attack was premeditated. Loza's possession of the weapon in custody was plainly separate from and antecedent to the attempted murder. Because the evidence allows the inference

14

that Loza possessed the weapon while in custody before the premeditated attack on Fuerte, notwithstanding his objective to use it to kill Fuerte, we conclude Loza's acts were divisible and not a single course of conduct. Therefore, section 654 does not compel a stay of the sentence on count 2.

IV. ***The Trial Court Did Not Abuse Its Discretion in Declining to Dismiss the Sentence Enhancement for Infliction of Great Injury under Section 12022, Subdivision (b)(1).***

The jury found true that Loza used a weapon to inflict great bodily injury upon the victim within the meaning of section 12022, subdivision (b)(1). The trial court enhanced Loza's sentence by adding a consecutive three-year term, declining Loza's request to strike the enhancement. In support of his request that the court strike the enhancement, Loza submitted evidence of several and severe mental, physical, and emotional traumas and impairments, including neurocognitive impairments, parental domestic violence and drug use in his childhood home, and kidnapping and sexual abuse when he lived in an out-of-home placement.

The People opposed striking the enhancement based on Loza's prior conviction of voluntary manslaughter and the circumstances of that crime which included shooting a rival gang member as he ran away from a confrontation with Loza.

The trial court considered the mitigating circumstances and acknowledged that Loza described "difficult circumstances that he faced as a young boy and a young man." It gave these "great weight." Nonetheless, it found that Loza presented a danger to "public safety given the extent of violence perpetrated in this case by Mr. Loza, as well as by his codefendant, Mr.

15

Garcia, consisting of approximately 30 stabs to the victim, which caused the victim substantial injuries . . . . [¶] . . . I am not exercising my discretion under Penal Code section 1385 to dismiss any enhancements because, unfortunately, doing so would endanger public safety.  And this is also considering Mr. Loza's past criminal history, including his most recent conviction surrounding a 2017 incident where he was convicted of voluntary manslaughter and sentenced to . . . [¶] . . . [¶] 26 years [to life] in state prison back in 2021. [¶] And I'll note, . . . that Mr. Loza was awaiting transport to state prison as a result of that prior conviction, at the time he committed this offense."

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) conferred upon the trial court the discretion to dismiss an enhancement "unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  The term "endanger public safety" means "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Ibid*.)  We review a court's decision not to strike an enhancement under section 1385 for abuse of discretion, a highly deferential standard.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373−374, 376−377.)  A court abuses its discretion when it acts in an arbitrary, capricious or patently absurd manner that results in a manifest miscarriage of justice.  (*Ibid*.)  A court is not required to state reasons for declining to exercise its discretion under section 1385 and is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)

16

Here the court acknowledged Loza's mitigating circumstances and gave them great weight but concluded that the circumstances of the offense, along with the fact that Loza had just been convicted of killing another person and was awaiting transport to state prison for that offense when he attempted to kill Fuerte, indicated that he posed a danger to public safety. That the court did not expressly find that Loza would continue to pose a threat to public safety at the time of his parole eligibility does not constitute an abuse of discretion under these facts. The trial court noted Loza would probably not be released until he was in his sixties, given the two sentences he would have to complete. From that we infer that the trial court declined to shorten Loza's sentence because it determined a long sentence was necessary to protect the public from him. Given Loza's back-to-back voluntary manslaughter and attempted murder convictions and the circumstances of the current offense (premeditating and then, with a codefendant, viciously stabbing a defenseless victim 30 to 40 times), it is reasonable to conclude there was no abuse of discretion in finding Loza a long term danger to public safety, or in finding that a shorter sentence was inappropriate even giving the mitigating circumstances great weight.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


VIRAMONTES, J.


SCHERB, J.


18